430 F.3d 567
 STOLT-NIELSEN SA, Stolt-Nielsen Transportation Group Ltd. (SNTG), Stolt-Nielsen Transportation Group, BV, and Stolt-Nielsen Transportation Group, Inc., Appellants,
v.
CELANESE AG, Celanese, Ltd., and Millenium Petrochemicals, Inc., Defendants-Claimants-Appellees,
Celanese Chemicals Europe GMBH, Celanese Pte, Ltd, Grupo Celanese SA, and Corporativos Celanese S. de RL de C.V., Claimants-Appellees,
Odfjell ASA, Odfjell USA, Inc., Odfjell Seachem as, Jo Tankers as, Jo Tankers, BV, and Jo Tankers, Inc., Plaintiffs.
Docket No. 04-6373 CV.
 United States Court of Appeals, Second Circuit.
 Argued: July 14, 2005.
 Decided: November 21, 2005.
 
 1
 J. Mark Gidley, White & Case, LLP, Washington, DC, for Appellants.
 
 
 2
 Hector Torres, Kasowitz, Benson, Torres & Friedman, LLP, New York, NY, for Appellees.
 
 
 3
 Before: STRAUB and SACK, Circuit Judges, and KRAVITZ, District Judge.*
 
 
 4
 KRAVITZ, District Judge.
 
 
 5
 Stolt-Nielsen SA, Stolt-Nielsen Transportation Group, Ltd., Stolt-Nielsen Transportation Group, BV, and Stolt-Nielsen Transportation Group, Inc. (collectively, "Stolt") appeal from an order of the United States District Court for the Southern District of New York (Jed. S. Rakoff, District Judge) granting a motion to enforce four subpoenas served on Stolt's custodians of records and denying Stolt's request to quash a subpoena served on its former counsel. The subpoenas were issued by an arbitration panel presiding over an arbitral proceeding to which neither Stolt nor its former counsel is a party. Section 7 of the Federal Arbitration Act (FAA) provides that arbitrators "may summon in writing any person to attend before them ... as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7. We have previously stated that "open questions remain as to whether § 7 may be invoked as authority for compelling pre-hearing depositions and pre-hearing document discovery, especially where such evidence is sought from non-parties." Nat'l Broadcasting Co., Inc. v. Bear Stearns & Co., 165 F.3d 184, 188 (2d Cir.1999). In this appeal, Stolt asks us to resolve the question left open in Bear Stearns and hold that Section 7 does not authorize arbitrators to issue subpoenas to compel pre-hearing depositions and document discovery from non-parties.
 
 
 6
 We decline to decide whether Section 7 authorizes arbitrators to issue subpoenas to non-parties to compel pre-hearing discovery, because there is no occasion to do so in this case. Contrary to Stolt's claim, the subpoenas in question did not compel pre-hearing depositions or document discovery from non-parties. Instead, the subpoenas compelled non-parties to appear and provide testimony and documents to the arbitration panel itself at a hearing held in connection with the arbitrators' consideration of the dispute before them. The plain language of Section 7 authorizes arbitrators to issue subpoenas in such circumstances. Therefore, the District Court did not err in granting the motion to compel or in denying the motion to quash.
 
 BACKGROUND
 
 7
 The present case arises out of a dispute over alleged anti-competitive behavior in the business of shipping and transporting chemicals by specialized shipping vessels known as parcel tankers. Celanese AG, Celanese Ltd., and Millenium Petrochemicals, Inc. (collectively, "Claimants") develop, produce, and sell chemical products. Between 1990 and 2002, Claimants entered into numerous contracts for the shipment of chemical products by Stolt and by two other groups of companies known in this case as "Odfjell" and "JO Tankers."[1] In 2003 and 2004, certain of the Odfjell and JO Tankers groups of companies (as well as certain individuals) pled guilty to a criminal conspiracy to rig bids and fix prices in the parcel tanker market in violation of the Sherman Act, 15 U.S.C. § 1. Stolt admitted participation in the conspiracy but was granted conditional amnesty from prosecution under the Sherman Act in connection with its parcel tanker operations.
 
 
 8
 Pursuant to an arbitration clause contained in the parties' shipping contracts,[2] Claimants instituted arbitration proceedings against Odfjell and JO Tankers for price-fixing, bid-rigging, and other wrongful behavior. Stolt is not a party to Claimants' arbitration with JO Tankers and Odfjell. Claimants' arbitration with Odfjell and JO Tankers is to be conducted in New York under the rules of the Society of Maritime Arbitrators, which provide that the powers and duties of the arbitrators will be governed by the Society's rules and the Federal Arbitration Act, 9 U.S.C. § 1 et seq. The arbitration panel consists of three arbitrators. The parties appointed two arbitrators, who in turn chose the Honorable John J. Gibbons, former Chief Judge of the United States Court of Appeals for the Third Circuit, as chairman of the panel.
 
 
 9
 In April 2004, the arbitration panel, at Claimants' request, issued a subpoena ad testificandum and subpoena duces tecum directing non-party Hendrikus van Westenbrugge, a former executive of JO Tankers then incarcerated at a federal correctional facility in New Jersey, to appear for a pre-hearing deposition before Claimants and to produce at that time various documents sought by Claimants. After Mr. van Westenbrugge failed to comply with the subpoena, Claimants moved the District Court to compel compliance with the arbitration panel's subpoena. The District Court declined. After considering the language of Section 7 and case law interpreting that provision, the court held that Section 7 grants arbitrators the power to compel non-parties to provide testimony and documents before the arbitrators themselves, but it does not authorize arbitrators "to compel a pre-hearing deposition of or pre-hearing document production from a non-party." Odfjell ASA v. Celanese AG, 328 F.Supp.2d 505, 507 (S.D.N.Y.2004) (emphasis in original).
 
 
 10
 In August 2004, the arbitration panel issued five more subpoenas, four of them directed to Stolt custodians of records and one to Stolt's former general counsel, Paul O'Brien. The subpoenas directed the recipients to "appear and testify in an arbitration proceeding" and to bring certain documents with them. Stolt moved the District Court to quash the subpoena directed to Mr. O'Brien (the "O'Brien subpoena"), and after Stolt indicated its intention not to comply with the custodians of records' subpoenas (the "Stolt subpoenas"), Claimants moved the District Court to compel compliance with the Stolt subpoenas.
 
 
 11
 On December 7, 2004, the District Court issued an order granting Claimants' motion to compel compliance with the Stolt subpoenas and denying Stolt's motion to quash the O'Brien subpoena. Having been apprised of the court's order, the arbitration panel informed Stolt that the subpoenas would be returnable on December 21, 2004. Stolt then appealed the December 7 order to this Court, and after the arbitration panel rejected Stolt's request for a continuance, Stolt asked the District Court to stay the arbitration hearing pending this appeal.
 
 
 12
 On December 18, 2004, the District Court denied Stolt's motion for a stay pending appeal and provided the parties with a written explanation for its December 7 order. Odfjell ASA v. Celanese AG, 348 F.Supp.2d 283 (S.D.N.Y.2004). The District Court rejected Stolt's argument that the subpoenas were "thinly disguised attempt[s] to obtain the pre-hearing discovery" that the court had previously prohibited. Id. at 286. The District Court explained that in contrast to the van Westenbrugge subpoenas, "the instant subpoenas ... call for the non-party to appear before the arbitrators themselves." Id. According to the court, "[t]his difference is dispositive" because Section 7 authorizes arbitrators to summon witnesses to testify "before them" and to bring documents, and that "is precisely what the instant subpoenas require." Id. at 287. Finally, the court rejected Stolt's argument that the subpoenas were unenforceable on grounds of inadmissibility and privilege, concluding that the arbitration panel was the proper venue to raise such arguments in the first instance. Id. at 287-88.
 
 
 13
 On December 21, 2004, a panel of this Court denied Stolt's motion for an emergency stay pending the present appeal. That same day, Mr. O'Brien and Stolt's custodians of records appeared before the arbitration panel in accordance with the subpoenas. Stolt's custodians of records brought with them more than 300 boxes of documents in response to the subpoenas. Due to the logistical difficulties in having the witnesses authenticate 300 boxes of documents, the parties agreed to continue compliance with the Stolt subpoenas, pending Claimants' review of the documents Stolt had produced.
 
 
 14
 Mr. O'Brien, however, did testify before the arbitration panel and also provided documents to the panel, in accordance with the subpoena. Stolt's counsel asserted attorney-client privilege at several points during the hearing in objection to questions asked of Mr. O'Brien.[3] Based on Stolt's assertion of privilege, Mr. O'Brien refused to answer thirty-two questions that the panel directed him to answer; Stolt also objected to Mr. O'Brien's production of several documents. See Odfjell ASA v. Celanese, 380 F.Supp.2d 297, 300 (S.D.N.Y.2005). After the hearing was adjourned, Claimants moved the District Court to compel Mr. O'Brien to answer the thirty-two questions and to produce the requested documents. Id. The District Court denied the motion, ruling that Stolt first should be allowed to produce evidence establishing the validity of its claim of attorney-client privilege. The court remanded the matter to the arbitration panel for further proceedings consistent with its opinion. Id. at 303.
 
 DISCUSSION
 I.
 
 15
 At the outset, we address the issues of subject matter and appellate jurisdiction, although the parties themselves do not question the existence of either. In their opening briefs, both parties presumed that the FAA provided a basis for subject-matter jurisdiction. However, in Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court explained that the FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331." Id. at 25 n. 32, 103 S.Ct. 927. We have similarly stated that "[i]t is well-established ... that the FAA, standing alone, does not provide a basis for federal jurisdiction." Westmoreland Capital Corp. v. Findlay, 100 F.3d 263, 267 (2d Cir.1996). Thus, we have held that a party invoking various provisions of the FAA in federal court must first establish a basis for subject matter jurisdiction independent of the FAA itself. See Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 136-40 (2d Cir.2002) (considering petitions brought under Sections 9 and 10); Westmoreland Capital Corp., 100 F.3d at 267-68; (Section four) Harry Hoffman Printing, Inc. v. Graphic Commc'ns, International Union, Local 261, 912 F.2d 608, 611 (2d Cir.1990) (Section 10).
 
 
 16
 This Court has not previously considered whether Section 7 requires an independent basis for subject matter jurisdiction. Section 7 does explicitly permit an aggrieved party to bring a petition before a district court to enforce an arbitration subpoena. See 9 U.S.C. § 7. But so do other provisions of the FAA that we have already determined require an independent basis of subject matter jurisdiction. See Westmoreland Capital Corp., 100 F.3d at 268; Harry Hoffman Printing, 912 F.2d at 611. There is no reason to reach a different conclusion for a party invoking Section 7. See Amgen, Inc. v. Kidney Ctr. of Delaware County, Ltd., 95 F.3d 562, 567 (7th Cir.1996) (holding that Section 7, like other provisions of the FAA, does not create subject matter jurisdiction); see also Westmoreland Capital Corp., 100 F.3d at 268 ("[A]lthough a number of provisions in the FAA refer to the `United States court' in a manner that suggests a bestowal of jurisdiction (e.g., FAA §§ 7, 9, 10, 11), these provisions have not been interpreted to confer jurisdiction on the federal courts."). Therefore, parties invoking Section 7 must establish a basis for subject matter jurisdiction independent of the FAA.
 
 
 17
 We are satisfied that the parties in this case have done so, since maritime jurisdiction provides an ample basis for subject matter jurisdiction. District courts have original jurisdiction under 28 U.S.C. § 1333(1) over "[a]ny civil case of admiralty or maritime jurisdiction," including cases involving maritime contracts. See CTI-Container Leasing Corp. v. Oceanic Operations Corp., 682 F.2d 377, 379 (2d Cir.1982) ("If the contract is a `maritime contract,' it is within the federal court's admiralty jurisdiction."). "Traditional texts have defined a `maritime' contract as one that, for example, relat[es] to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment...." Id. (alteration in original) (internal quotation marks). The shipping contracts at issue in the underlying arbitration — contracts between chemical producers and parcel tanker companies for the global shipment of chemical products — fit squarely within the definition of a maritime contract. See The Gothland, 64 U.S. (23 How.) 491, 493-94, 16 L.Ed. 516 (1859) ("[C]ontracts of affreightment are `maritime contracts' within the true meaning and construction of the Constitution and act of Congress ....").
 
 
 18
 Those maritime contracts provided the basis for subject matter jurisdiction when this case originally arrived in the District Court. At that time, Odfjell and JO Tankers asked the District Court to stay the arbitration that Claimants had filed under the terms of their maritime contracts. See Odfjell ASA v. Celanese AG, No. 04 Civ. 1758, 2004 WL 1574728, at *1 (S.D.N.Y. July 14, 2004). Emphasizing the existence of "substantial reasons in favor of arbitrability," id. at *3, the court rejected the stay request, an order that "was essentially the equivalent of an order ... to compel arbitration." Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698, 705 (2d Cir.1985). We have previously explained that "a court which orders arbitration retains jurisdiction to determine any subsequent application involving the same agreement to arbitrate." Id.; see also Amgen, Inc. v. Kidney Ctr. of Delaware County, Ltd., 95 F.3d 562, 566 (7th Cir.1996) ("Once the court orders arbitration, it may, of course, also order compliance with summonses from the arbitrator."). Therefore, in this case, the District Court properly retained subject matter jurisdiction under 28 U.S.C. § 1333(1) over any later applications or petitions arising out of the parties' arbitration, including the motions to compel and quash that form the basis of this appeal.[4]
 
 
 19
 Satisfied that subject matter jurisdiction exists, we next turn to this Court's jurisdiction over the present appeal. See Arnold v. Lucks, 392 F.3d 512, 517 (2d Cir.2004) ("[E]very federal appellate court has a special obligation to satisfy itself... of its own jurisdiction...." (internal quotation marks omitted)). Section 16(a)(3) of the FAA confers a right to an appeal from a "final decision with respect to an arbitration that is subject to this title." 9 U.S.C. § 16(a)(3). The Seventh Circuit has previously held that a district court order compelling compliance with arbitration subpoenas "is final and appealable for the purposes of § 16(a)(3)." Amgen, 95 F.3d at 567. According to the Seventh Circuit, the district court's order was immediately appealable because it was the "final" product of an "independent" proceeding, rather than an interlocutory order from an "embedded proceeding [that] is a constituent part of a more comprehensive litigation." Id. at 566. Amgen is the only circuit court decision directly addressing appellate jurisdiction in the context of a district court order regarding enforcement of an arbitration subpoena, though other circuits have assumed jurisdiction in that context without discussion. See Hay Group, Inc. v. E.B.S. Acquisition Corp., 360 F.3d 404, 406 (3d Cir.2004); COMSAT Corp. v. Nat'l Sci. Found., 190 F.3d 269, 274 (4th Cir.1999).
 
 
 20
 However, the Seventh Circuit's reliance in Amgen on the dichotomy between so-called "independent proceedings" and "embedded proceedings" was cast into considerable doubt by the Supreme Court's decision in Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). See Salim Oleochemicals v. M/V SHROPSHIRE, 278 F.3d 90, 92 (2d Cir.2002) (recognizing that the "analysis prescribed in Green Tree displaces [an] approach which turn[s] on the independent/embedded distinction"). There, the Supreme Court rejected the notion that "Congress intended to incorporate the rather complex independent/embedded distinction, and its consequences for finality, into § 16(a)(3)." Green Tree Fin., 531 U.S. at 88-89, 121 S.Ct. 513. Instead, the Supreme Court instructed lower courts that the phrase "final decision" in Section 16(a)(3) is to be construed in accordance with that term's "consistent and longstanding interpretation." Id. at 88, 121 S.Ct. 513.
 
 
 21
 Under traditional finality principles, a district court's decision to compel compliance with a subpoena or to deny a motion to quash a subpoena is generally not a "final decision" and therefore is not immediately appealable. Thus, in United States v. Construction Products Research, Inc., 73 F.3d 464 (2d Cir.1996), we observed that "[t]he general rule is that orders enforcing subpoenas issued in connection with civil and criminal actions ... are not final, and therefore not appealable." Id. at 468 (emphasis in original). See, e.g., United States v. Ryan, 402 U.S. 530, 532-33, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); Cobbledick v. United States, 309 U.S. 323, 328, 60 S.Ct. 540, 84 L.Ed. 783 (1940); In re DG Acquisition Corp., 151 F.3d 75, 85 (2d Cir.1998). See generally 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2466, at 87 (2d ed.1995). Instead, in a criminal or civil proceeding, a witness wishing to contest a subpoena must usually disobey the subpoena, be held in civil or criminal contempt, and then appeal the contempt order. See Constr. Prods. Research, 73 F.3d at 469 ("To obtain appellate review, the subpoenaed party must defy the district court's enforcement order, be held in contempt, and then appeal the contempt order, which is regarded as final under [28 U.S.C.] § 1291."). And this is true whether the witness attempting to quash a subpoena is a party to the litigation in which the subpoena was issued or merely a non-party witness. See Dove v. Atl. Capital Corp., 963 F.2d 15, 17 (2d Cir.1992) ("A non-party witness ordinarily may not appeal directly from an order compelling discovery but must instead defy the order and be found in contempt in order to obtain review of the court's initial order."); see also United States v. Nixon, 418 U.S. 683, 690-92, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch., 591 F.2d 174, 177 (2d Cir.1979).[5]
 
 
 22
 There is a different rule in administrative proceedings. "A district court order enforcing a subpoena issued by a government agency in connection with an administrative proceeding may be appealed immediately without first performing the ritual of obtaining a contempt order." Constr. Prods. Research, 73 F.3d at 469; see, e.g., RNR Enter., Inc. v. S.E.C., 122 F.3d 93 (2d Cir.1997) (considering an appeal from a district court's enforcement of administrative subpoenas); In re Gimbel, 77 F.3d 593 (2d Cir.1996) (same). As this Court has explained, "The rationale is that, at least from the district court's perspective, the court's enforcement of a agency subpoena arises out of a proceeding that `may be deemed self-contained, so far as the judiciary is concerned.... [T]here is not, as in the case of a grand jury or trial, any further judicial inquiry which would be halted were the offending [subpoenaed party] permitted to appeal.'" Constr. Prods. Research, 73 F.3d at 469 (alterations in original) (quoting Cobbledick, 309 U.S. at 330, 60 S.Ct. 540).
 
 
 23
 One could certainly argue that enforcement of an arbitration subpoena presents a situation closer to that of an administrative agency subpoena than enforcement of a subpoena in a ordinary civil or criminal proceeding. On the other hand, Section 7 itself explicitly states that if a witness neglects a summons to appear at an arbitration hearing, a district court may "punish said person ... for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States." 9 U.S.C. § 7. This language might suggest that the usual rules governing challenges to court subpoenas (including the rules governing appellate jurisdiction) should also apply to subpoenas issued by arbitrators. Furthermore, courts have a well-recognized interest in preventing arbitrations from being slowed down by, or burdened by the expense of, piecemeal appeals of every subpoena issued by an arbitration panel. See Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 90 (2d Cir.2005) (describing the "twin goals of arbitration" to be "settling disputes efficiently and avoiding long and expensive litigation" (internal quotation marks omitted)). As the Supreme Court and this Court have often observed, in enacting the FAA Congress sought to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Moses H. Cone, 460 U.S. at 22, 103 S.Ct. 927.
 
 
 24
 Having set forth the competing interests, we find that in this case we need not choose between them. For there is another, well-recognized basis for appellate jurisdiction in this particular case that permits us to leave undecided the issue addressed by the Seventh Circuit in Amgen. This Court has previously recognized that where a subpoenaed third-party witness does not object to testifying, but someone else does — often on grounds of privilege — a district court's refusal to quash the subpoena is immediately appealable by the objecting party. See In re Grand Jury Proceedings, 219 F.3d 175, 182 n. 3 (2d Cir.2000) (permitting a company to immediately appeal a district court's enforcement of subpoenas issued to its counsel and founder). "The theory of immediate appealability... is that the third party [witness] will not be expected to risk a contempt citation and will surrender the documents sought, thereby letting the `cat out of the bag' and precluding effective appellate review at a later stage." In re Katz, 623 F.2d 122, 124 (2d Cir.1980). Here, Stolt objects to the District Court's denial of its motion to quash the O'Brien subpoena. Like the third-party witness in In re Katz, Mr. O'Brien cannot be expected to risk a contempt citation rather than comply with the subpoena. Indeed, he has demonstrated that he is more than willing to comply with the subpoena without any additional prompting. Therefore, under traditional finality principles, the District Court's order refusing to quash the O'Brien subpoena is immediately appealable.
 
 
 25
 Appellate jurisdiction over the order enforcing the Stolt subpoenas is less clear under traditional finality principles, for the reasons discussed above. However, because we have clear jurisdiction over Stolt's appeal involving the O'Brien subpoena, we may exercise pendent jurisdiction over the appeal involving the related Stolt subpoena. Pendent appellate jurisdiction allows an appeals court to exercise jurisdiction over a non-final claim "where [the] issue is `inextricably intertwined' with an issue over which the court properly has appellate jurisdiction." Lamar Adver. of Penn, LLC v. Town of Orchard Park, New York, 356 F.3d 365, 371 (2d Cir.2004) (quoting Swint v. Chambers County Comm'n, 514 U.S. 35, 50-51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995)). This Court has exercised pendent appellate jurisdiction where the same specific question underlay both the appealable order and the non-appealable order, or where resolution of the non-appealable order was subsidiary to resolution of the appealable order. See, e.g., Luna v. Pico, 356 F.3d 481, 486-87 (2d Cir.2004) (exercising pendent jurisdiction over the denial of plaintiff's motion for summary judgment on liability because whether plaintiff's constitutional rights were violated was inextricably intertwined with the immediately appealable issue of defendants' qualified immunity); Pathways, Inc. v. Dunne, 329 F.3d 108, 113 (2d Cir.2003) (finding that denial of a preliminary injunction was inextricably intertwined with an otherwise-non-appealable dismissal of claims for injunctive and declaratory relief based on the Younger abstention doctrine); U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 199 F.3d 94, 97 (2d Cir.1999) (explaining that, where a party appeals a finding of subject matter jurisdiction based on the "commercial activity exception" in the Foreign Sovereign Immunities Act ("FSIA"), pendent jurisdiction will exist over a finding of personal jurisdiction to the extent that "questions regarding minimum contacts for personal jurisdiction purposes and commercial contacts for FSIA purposes [are] inextricably intertwined.").
 
 
 26
 In this appeal, the issue is identical for both the Stolt subpoenas and the O'Brien subpoena, as Stolt asks us to quash both sets of subpoenas "as beyond the scope of Section 7 of the Federal Arbitration Act." Moreover, the District Court recognized that a motion to compel compliance with the O'Brien subpoena would have to be granted "for the same reasons ... as requires the Court to grant claimants' motion to compel compliance with the Stolt-Nielsen subpoena." Odfjell ASA v. Celanese AG, 348 F.Supp.2d 283, 288 (S.D.N.Y.2004); cf. Lamar Adver., 356 F.3d at 372 (exercising pendent jurisdiction where the district court denied plaintiff's "request for a preliminary injunction for the very same reasons it denied [his] motion for summary judgment"). Therefore, under the circumstances of this case, we find that an exercise of our pendent jurisdiction is proper over Stolt's appeal from the District Court's order enforcing the Stolt subpoenas.[6]
 
 II.
 
 27
 Turning to the merits of Stolt's appeal, we note at the outset that we review the District Court's interpretation of Section 7, as we review other questions of statutory interpretation, de novo. See Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 107 (2d Cir.2001); United States v. Koh, 199 F.3d 632, 636 (2d Cir.1999). Section 7 provides in relevant part that "[t]he arbitrators ... or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7.[7] The subpoenas at issue in this appeal directed Mr. O'Brien and the Stolt custodians to appear and testify, and also provide documents, at a hearing convened before the arbitration panel. No party to this appeal contests the materiality of the evidence sought by the subpoenas. Therefore, as the District Court rightly recognized, in issuing the O'Brien and Stolt subpoenas, the arbitration panel invoked precisely the authority that Section 7 unambiguously grants them.
 
 
 28
 Stolt does not dispute the power of arbitrators to subpoena non-parties for testimony and documents at what Stolt calls a "trial-like arbitration hearing on the merits." What fuels Stolt's objection, and what Stolt devotes its entire brief to arguing, is that Section 7 does not empower arbitrators to summon non-parties for the purpose of compelling testimonial and documentary discovery in advance of a "merits hearing," and that the subpoenas in question were "a thinly disguised effort to obtain pre-hearing discovery." Evidencing this subterfuge, according to Stolt, is a letter from Claimants to the arbitration panel explaining the need — in light of the District Court's ruling on the van Westenbrugge subpoena — to convene a hearing so that non-party evidence and documents could be obtained. Stolt also makes much of the fact that the subpoena was returnable on December 21, 2004, during the period that the arbitration panel had scheduled for fact depositions and months in advance of October 17, 2005, the date set by the panel for commencement of the "Arbitration hearing on the merits." In sum, Stolt alleges that Claimants and the arbitration panel have conspired to "circumvent Section 7's limitations through the contrivance of conducting its discovery in the presence of the arbitrators."
 
 
 29
 Like the District Court, we are not persuaded that the December 21 hearing was the ruse Stolt claims it to be. Therefore, we have no occasion to rule on the authority of arbitrators to order non-parties to participate in discovery. Any rule there may be against compelling non-parties to participate in discovery cannot apply to situations, as presented here, in which the non-party is "summon[ed] in writing . . . to attend before [the arbitrators] or any of them as a witness and . . . to bring with him . . . [documents] which may be deemed material as evidence in the case." 9 U.S.C. § 7.
 
 
 30
 Several factors convince us that the subpoenas were well within the authority provided arbitrators under Section 7, although we hasten to add that we do not suggest that all of these factors need be present in every case in order to justify arbitration subpoenas under Section 7. First, the custodians and Mr. O'Brien were not ordered to appear for depositions. Depositions usually take place outside the presence of the decision maker, and they are designed to allow parties to prepare for the eventual presentation of evidence or examination of witnesses before the decision maker at trial or a hearing. See Black's Law Dictionary 451 (7th ed.1999) (defining "deposition" as "[a] witness's out-of-court testimony that is reduced to writing . . . for later use in court or for discovery purposes" (emphasis added)). Here, by contrast, the custodians and Mr. O'Brien were directed to appear at a hearing before the arbitrators, and all three arbitrators were present at that hearing. See Hay Group, Inc. v. E.B.S. Acquisition Corp., 360 F.3d 404, 407 (3d Cir.2004) (noting that while Section 7 does not permit a subpoena to compel production from a non-party in absence of a hearing, it does permit subpoenas in which "the non-party has been called to appear in the physical presence of the arbitrator and to hand over the documents at that time").
 
 
 31
 Second, the arbitrators heard testimony directly from Mr. O'Brien, and unlike a deposition, the panel ruled at the hearing on evidentiary issues such as admissibility and privilege and reserved on other evidentiary issues. Indeed, the hearing transcript reveals that the hearing was primarily devoted to resolving evidentiary issues, especially the issue of whether and to what extent attorney-client privilege foreclosed Mr. O'Brien's testimony. While the custodians were not required to testify, that was the result of a consensual agreement between Stolt and Claimants and not a function of the arbitration subpoena or the hearing process itself.
 
 
 32
 Third, the testimony provided at the hearing became part of the arbitration record, to be used by the arbitrators in their determination of the dispute before them. Finally, we note that if Judge Rakoff had been of the view that the arbitrators and Claimants were attempting by artifice to undermine his prior order forbidding the use of Section 7 to take discovery of non-parties, there is every reason to believe he would have so found. But, in fact, he concluded based upon the record before him and the representations of the parties that the December 21 hearing was convened by the arbitrators in good faith and that it complied with Section 7, as well as the spirit and terms of his prior ruling. Section 7 does not deny arbitrators the power to summon witnesses to a hearing under such circumstances.
 
 
 33
 Contrary to Stolt's assertions, the mere fact that the session before the arbitration panel on December 21 was preliminary to later hearings that the panel intended to hold does not transform the December 21 hearing into a discovery device. As Judge Rakoff rightly recognized, "Nothing in the language of the FAA limits the point in time in the arbitration process when [the subpoena] power can be invoked or says that the arbitrators may only invoke this power under section 7 at the time of the trial-like final hearing." Odfjell ASA, 348 F.Supp.2d at 287. To the contrary, the language of Section 7 is broad, limited only by the requirement that the witness be summoned to appear "before [the arbitrators] or any of them" and that any evidence requested be material to the case. See 9 U.S.C. § 7.
 
 
 34
 According to Stolt, that "Section 7 speaks of a `witness' providing `evidence'" suggests that the provision applies only to a merits hearing akin to a full-blown trial. Yet, often witnesses are called and evidence is adduced in contexts other than trials. For instance, courts hear evidence and testimony at preliminary hearings on issues such as the admissibility of evidence or on a motion for interim relief. See, e.g., New York ex rel. Spitzer v. Operation Rescue Nat'l, 273 F.3d 184, 199 (2d Cir.2001) (noting that a district court heard testimony at a preliminary injunction hearing); Frank v. Plaza Constr. Corp., 186 F.Supp.2d 420, 425 (S.D.N.Y.2002) (noting that the court held an "evidentiary hearing" before trial to determine the authenticity and admissibility of a document).
 
 
 35
 So, too, arbitrators may need to hear testimony or receive evidence on preliminary issues — such as whether an arbitration clause is enforceable or whether a claim is barred by relevant statutes of limitations — in advance of an ultimate hearing on the substantive merits of the underlying claims in the arbitration. See, e.g., Tellium, Inc. v. Corning Inc., No. 03 Civ. 8487, 2004 WL 307238, at *1 (S.D.N.Y. Feb.13, 2004) (noting that an arbitration panel "[found] disputed issues of fact regarding" plaintiff's claim that it was not a proper party to the arbitration and "grant[ed it] the right to present evidence on the matter at an early hearing in advance of the plenary hearing"); Echeverri v. Starrett City, Inc., No. 96-CV-1006, 1998 WL 903482, at *2 (E.D.N.Y. Dec. 7, 1998) (noting that "consideration of [plaintiff's] claim on the merits" was to follow an "initial hearing" on the issue of arbitrability). Arbitrators may also need to hold a preliminary hearing to decide whether to preserve the status quo, as well as to decide issues of privilege, authenticity, and admissibility. See Am. Express Fin. Advisors Inc. v. Thorley, 147 F.3d 229, 230-31 (2d Cir.1998) (recognizing that arbitrators can grant preliminary injunctive relief); American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, at R-31(b) ("The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant."); id. at R-34(a) ("The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods."). In any case, we doubt that arbitrators are prohibited from making use of their powers under Section 7 to hear testimony and gather evidence as to the merits of a dispute so long as they do so by summoning witnesses and evidence before them.
 
 
 36
 Just as a subpoena can issue under Rule 45 of the Federal Rules of Procedure to compel witnesses "to attend and give testimony" and "produce . . . books, documents or tangible things" at a "trial or hearing," Section 7 authorizes arbitrators to subpoena witnesses "to attend before them . . . and . . . bring with him or them any [relevant] book, record, document, or paper . . . in the same manner as subpoenas to appear and testify before the court." 9 U.S.C. § 7 (emphasis added). Moreover, as the District Court correctly observed, Section 7's reference to hearings "before [the arbitrators] or any of them" suggests that the provision authorizes the use of subpoenas at preliminary proceedings even in front of a single arbitrator, before the full panel "hears the more central issues." Odfjell, 348 F.Supp.2d at 287. Thus, there is nothing in the language of Section 7 that requires, or even suggests, the limitation that Stolt advances.
 
 
 37
 Furthermore, the present case demonstrates the usefulness of employing subpoenas at a preliminary hearing before the arbitration panel. Because Stolt's interests and those of Mr. O'Brien were not aligned, Mr. O'Brien did not object to appearing before the arbitrators. In view of Stolt's assertion of privilege, however, issues remained as to which questions Mr. O'Brien would be permitted to answer, even if he were willing to provide answers. Rather than be forced to deal with thorny issues of privilege at the "final" hearing, the arbitrators were instead able to subpoena Mr. O'Brien for a preliminary session in which those issues could be resolved. Similarly, even though the parties dispensed with the testimony of the Stolt custodians, the hearing could also have usefully resolved issues of foundation and admissibility regarding the Stolt documents in advance of a final hearing.
 
 
 38
 Stolt objects that if non-party witnesses may be summoned to hearings other than the final "merits hearing," witnesses will face the burdensome prospect of being recalled to testify at multiple sessions. In that regard, however, it is worth noting that Claimants assured the District Court before it decided to enforce the subpoenas that Claimants would not recall Stolt's custodians of records for multiple hearings. Id. at 287 n. 2. Nor should we lightly assume that arbitrators will subpoena third-party witnesses gratuitously, since the arbitrators themselves must attend any hearing at which such subpoenas are returnable. See Hay Group, Inc. v. E.B.S. Acquisition Corp., 360 F.3d 404, 414 (3d Cir.2004) (Chertoff, J., concurring) (noting that Section 7's "procedure requires the arbitrators to decide that they are prepared to suffer some inconvenience of their own" when they subpoena third-party witnesses). Arbitrators issuing subpoenas and district courts asked to enforce them can, and should, take steps to minimize the burden on non-party witnesses. Indeed, that is precisely what happened here.[8]
 
 
 39
 Finally, there is an artificiality about Stolt's argument that further confirms the wisdom of rejecting it. Arbitration hearings, even "trial-like merits hearings," are often continued, frequently with many months elapsing between hearing sessions. If the arbitrators had summoned Mr. O'Brien or the Stolt custodians for the first day of the scheduled hearings on the merits on October 17, 2005, heard their testimony, and then adjourned for ten months, before reconvening, even Stolt would concede that Section 7 would authorize the subpoenas. Yet, according to Stolt, the ten-month gap here between the December 21, 2004, hearing and the beginning of the "merits" hearing somehow rendered the subpoenas invalid. Nothing in the language of Section 7 or common sense dictates such a result. Here, as noted above, all three arbitrators participated in a hearing in which they received testimony and documents, took evidence, and considered matters of admissibility and privilege, resolving many of them. Preliminary or not, what occurred on December 21, 2004, was the sort of hearing to which Section 7 authorizes arbitrators to summon non-party witnesses.
 
 CONCLUSION
 
 40
 In sum, we again leave to another day the question whether Section 7 authorizes arbitrators to issue discovery-type subpoenas to those who are not parties to the arbitration. We decide only that Section 7 unambiguously authorizes arbitrators to summon non-party witnesses to give testimony and provide material evidence before an arbitration panel, and that is precisely what occurred in this case. Accordingly, the O'Brien and Stolt subpoenas were authorized by Section 7, and the District Court's judgment is affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable Mark R. Kravitz of the United States District Court for the District of Connecticut, sitting by designation
 
 
 [1]
 "Odfjell" refers collectively to Odfjell ASA, Odfjell USA, Inc., and Odfjell Seachem AS. "JO Tankers" refers collectively to JO Tankers AS, JO Tankers BV, and JO Tankers, Inc
 
 
 [2]
 The shipping contracts incorporated by reference a set of standardized industry charter party terms commonly known as "ASBATANKVOY." The ASBATANKVOY contains an arbitration clause, which provides, in pertinent part, as follows:
 
 
 [24]
 ARBITRATION. Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York or in the City of London whichever place is specified in Part I of this charter pursuant to the laws relating to arbitration there in force, before a board of three persons, consisting of one arbitrator to be appointed by the Owner, one by the Charterer, and one by the two so chosen
 
 
 [3]
 After leaving Stolt but prior to being subpoenaed, Mr. O'Brien had sued Stolt "to remedy the career damages he ... suffered as a result of [Stolt's] criminal activity." Therefore, Stolt's interests and Mr. O'Brien's interests were not necessarily aligned
 
 
 [4]
 Because we conclude that the District Court had subject matter jurisdiction under 28 U.S.C. § 1333(1), we need not consider the alternative grounds of subject matter jurisdiction proffered by the parties — namely, jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 201et seq.) and diversity jurisdiction (28 U.S.C. § 1332).
 
 
 [5]
 When one district court denies a motion to compel a third-party subpoena issued by another court in the same circuit, the denial is not immediately appealable, even though it may represent the only issue pending before the court asked to compel the third-party subpoenaSee Barrick Group, Inc. v. Mosse, 849 F.2d 70 (2d Cir.1988). In Barrick Group, we noted that when both the court issuing the subpoena and the court considering the motion to compel are in the same circuit, "a circuit court can consider any appeal on discovery issues at the same time as the appeal from the judgment in the underlying action. This approach avoids piecemeal proceedings, strengthens the rule of finality and provides ultimately for the effective review of all issues." Id. at 73. However, where the principal action and ancillary proceeding are pending in different circuits, we allow an immediate appeal of discovery decisions on the ground that "there can be no effective review of the determination under such circumstances unless the interlocutory appeal is allowed." Id.; see Baker v. F & F Investment, 470 F.2d 778, 780 n. 3 (2d Cir.1972); Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 554 (2d Cir.1967).
 
 
 [6]
 One further jurisdictional issue deserves mention. Even though there has been partial compliance with the subpoenas, this dispute is not moot because the full scope of Mr. O'Brien's testimony before the arbitration panel has not yet been resolvedSee Odfjell, 380 F.Supp.2d at 303 (remanding to the arbitration panel for reconsideration of Stolt's attorney-client privilege claims). Similarly, whether the custodians have properly complied with the Stolt subpoenas also has not yet been decided. "[S]o long as the appellant retains some interest in the case, so that a decision in its favor will inure to its benefit, its appeal is not moot." New England Health Care Employees Union v. Mount Sinai Hosp., 65 F.3d 1024, 1029 (2d Cir.1995); see Constr. Prods. Research, 73 F.3d at 469 ("[A]lthough Respondents have largely complied with the subpoena, they have not surrendered the allegedly privileged documents. Thus, this case is not moot....").
 
 
 [7]
 Section 7, in its entirety, provides as follows:
 The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.
 9 U.S.C. § 7.
 
 
 [8]
 Stolt also argues that affirming the District Court's order would "permit[] [Claimants] to call anunlimited number of Stolt-Nielsen employees." Yet, the risk that Claimants might subpoena a large number of Stolt employees would remain even if we were to agree with Stolt that Section 7 limits the summoning of non-party witnesses to the merits hearing. Nor is there any evidence that Claimants intend to call a litany of Stolt witnesses.